## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

JOSEPH THOMAS,

              Plaintiff,

      v.

GENENTECH, INC.,

              Defendant.

Case No. 3:21-cv-01409-IM

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Daniel J. Snyder, John D. Burgess, Carl Lee Post, Law Offices of Daniel Snyder, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Attorneys for Plaintiff.

Paul C. Buchanan, Lucy G. Ohlsen, Avalyn C. Taylor, Buchanan Angeli Altshul & Sullivan LLP, 921 SW Washington Street, Suite 516, Portland, OR 97205. Attorneys for Defendant.

**IMMERGUT, District Judge.**

On September 23, 2021, Plaintiff Joseph Thomas ("Plaintiff") filed a complaint in federal court alleging eight claims against Defendant Genentech, Inc. ("Defendant"): (1) discrimination in violation of Title I of the Americans with Disabilities Act ("ADA") ("Claim One"), (2) retaliation in violation of Title I of the ADA ("Claim Two"), (3) discrimination and retaliation in violation of the Oregon Rehabilitation Act ("O.R.A."), Oregon Revised Statute ("O.R.S.") 659A.103 *et seq.* ("Claim Three"), (4) worker compensation discrimination and retaliation in

violation O.R.S. 659A.040 ("Claim Four"), (5) failure to reemploy in violation of O.R.S. 659A.046 ("Claim Five"), (6) whistleblower discrimination and retaliation in violation of O.R.S. 659A.199 ("Claim Six"), (7) whistleblower discrimination and retaliation in violation of O.R.S. 654.062 ("Claim Seven"), and (8) intentional infliction of emotional distress ("Claim Eight"). ECF 1 at ¶ 28–89. On July 6, 2022, Plaintiff filed a stipulated motion to amend the complaint to voluntarily dismiss Claim Eight for intentional infliction of emotional distress, ECF 14, which this Court granted, ECF 15. On October 28, 2022, Defendant filed a Motion for Summary Judgment on Plaintiff's first seven claims, as well as Defendant's affirmative defense of failure to mitigate. ECF 33. Plaintiff filed a response to this motion, ECF 42, and Defendant filed a reply, ECF 50.

Before this Court is Defendant's Motion for Summary Judgment. ECF 33. For the reasons stated below, this Court GRANTS Defendant's motion as to Claims One through Seven. Accordingly, as all of Plaintiff's claims are dismissed, this Court DENIES as moot Defendant's motion as to Defendant's affirmative defense of failure to mitigate.

## STANDARDS

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

## BACKGROUND

On or shortly after April 8, 2019, Plaintiff Joseph Thomas ("Plaintiff") commenced his employment at Genentech, Inc. as an Aseptic Operations Technician. ECF 34, Ex. 1 at 11–12; ECF 35 at ¶ 3. Plaintiff's role as an Operations Technician involved a variety of tasks, including testing filters, loading vessels with stoppers, sterilizing components, conducting filter integrity testing, and maintenance tasks including mopping floors, walls, and ceilings. ECF 34, Ex. 1 at 10; ECF 35 at ¶ 7. New employees in this role are expected to demonstrate competence in multiple areas of component preparation and to obtain "sign off" from their trainers to demonstrate their "qualification" in specific areas of component preparation. ECF 35 at ¶ 7. Such areas include vial washing, stopper processor, kitting, autoclave, and filter integrity testing. *Id.* According to Plaintiff's supervisor, Huy Tran, it takes between a year to a year and a half for Aseptic Operations Technicians to achieve competency in all tasks. ECF 43-8 at 22.

### A. Early Reports of Workplace Misconduct and Underperformance

Throughout most of his employment, Plaintiff worked his shift with Abdiaziz Abi, Patricia Hendrickson, Adeline Murerangondo, Kyle Morris, and Filadelfo Rodriguez. ECF 35 at ¶ 4; ECF 34, Ex. 1 at 11. Kyle Morris acted as the lead on his shift. ECF 34, Ex. 1 at 20. In the early weeks of Plaintiff's employment, Plaintiff's coworkers complained to Mr. Tran about Plaintiff's perceived lack of respect for others and his "negative attitude about learning . . . processes." ECF 43, Ex. F; ECF 34, Ex. 1 at 75–76; ECF 35 at ¶¶ 9–11. On June 19, 2019, Mr. Tran met with Plaintiff to discuss the concerns about his communication with his coworkers, including the manner in which Plaintiff was "handl[ing] his frustrations on the job" and his

tendency to "curse and swear." ECF 34, Ex. 1 at 13; ECF 35, Ex. 3 at 3. Mr. Tran instructed

Plaintiff that he "need[ed] to be professional and demonstrate respect" to his coworkers.  ECF 35,

Ex. 3 at 3. One week later, on June 25, 2019, Mr. Tran met with Plaintiff again about the

continuing concerns he was hearing from Plaintiff's coworkers. ECF 35, Ex. 3 at 3. In this

meeting, Mr. Tran informed Plaintiff that "[his] attitude ha[d] made a significant impact to the

shift" and that "every single team member ha[d] brought concerns to [his] attention." *Id.* At the

end of June 2019, Mr. Tran began an approximately two-month sabbatical. ECF 35 at ¶ 12. At

that time, Plaintiff intended to have all of his qualifications met by the time Mr. Tran returned

from sabbatical. ECF 34, Ex. 1 at 26.

While Mr. Tran was on sabbatical, another Genentech supervisor, Courtney Callaway,

was responsible for supervising Plaintiff's shift. ECF 36 at ¶ 2. On August 14, Ms. Callaway

emailed Employee Relations Manager, Tammy James-Ishibashi, stating that she had received

feedback from several coworkers that "[Plaintiff] was not only struggling with his qualifications,

but his attitude has been poor." ECF 36, Ex. 1 at 1. Ms. Callaway also communicated that she

had received reports about "situations when [Plaintiff] has acted rudely or become easily

frustrated to the point of anger." *Id.* Ms. Callaway also forwarded an email to Ms. James-

Ishibashi from Mr. Morris, the shift lead, that summarized various incidents in which Plaintiff

had behaved in an angry or otherwise unprofessional manner. ECF 36, Ex. 2. Mr. Morris's

summary included a report that Plaintiff had told a coworker "I'm not your cleaning bitch," and

that he had said to another coworker that he "didn't need to be taught how to mop a fucking

floor." *Id.* at 2. While Plaintiff denies making these specific inappropriate comments, he does not

dispute that Mr. Morris reported to Ms. Callaway that Plaintiff had made these comments. ECF

34, Ex. 1 at 28–30.

On August 11 and 12, 2019, Ms. Callaway spoke to Plaintiff about the feedback she had received about his angry and inappropriate interactions and her concern that he was not treating his coworkers in a professional and respectful manner. ECF 36 at ¶ 4; ECF 34, Ex. 1 at 19–20. Plaintiff recalls that Ms. Callaway was "very clear" with him that "lashing out or treating his peers" in an unprofessional or disrespectful manner "was unacceptable" and that "if [she] received any more feedback similar to this that [she] would need to escalate the issue." ECF 36 at ¶ 4; ECF 34, Ex. 1 at 19–20. After these meetings, Plaintiff "vent[ed]" to Ms. Hendrickson about what Ms. Callaway had told him. ECF 34, Ex. 1 at 21, 23–24. Ms. Hendrickson subsequently reported, as Ms. Callaway noted in her August 14, 2019 email to Ms. James-Ishibashi, that Plaintiff declared that he "couldn't believe these assholes would complain about him," and "if they could understand English" then he could work better with "these foreigners." ECF 36, Ex. 1 at 1. Ms. Hendrickson reported to Ms. Callaway that Plaintiff seemed "extremely angry to the point that" she "felt threatened." *Id.* Plaintiff disputes the accuracy of Ms. Hendrickson's account, but agrees that he "vent[]ed" to Ms. Hendrickson about Ms. Calloway's feedback. ECF 34, Ex. 1 at 23–24.

In August of 2019, Ms. Callaway also expressed concern to Plaintiff about his lack of progress in achieving his qualifications. ECF 34, Ex. 1 at 56. Ms. Callaway documented in her August 14 email to Ms. James-Ishibashi that Plaintiff was making little progress on his qualifications and "has achieved only 1 so far." ECF 36, Ex. 1 at 2. She noted that "[t]asks that all technicians are expected to perform he struggles with" and that "[h]is computer skills are extremely low and he is not receptive to learning more." *Id.*

As a result of reports about Plaintiff's behavior, Ms. James-Ishibashi traveled from Genentech's San Francisco headquarters to Oregon in the later half of August 2019 to conduct an

investigation at Plaintiff's facility. ECF 34, Ex. 6 at 3–4; *see* ECF 34, Ex. 1 at 34. When Mr. Tran returned from his sabbatical near the end of August, he learned that Plaintiff's coworkers had made complaints about Plaintiff while Mr. Tran had been gone that had resulted in a formal HR investigation. ECF 35 at ¶ 13. Thereafter, Mr. Tran and Ms. James-Ishibashi agreed that Mr. Tran would prepare a formal written performance counseling document to address these performance concerns. ECF 35 at ¶ 14; *see generally* ECF 35, Ex. 1. Ms. James-Ishibashi sent Mr. Tran a template "Performance Counseling" document for Plaintiff on August 27, 2019. ECF 35, Ex. 1. Also on August 27, 2019, Mr. Tran's manager, Edward Venegas, emailed Mr. Tran with information about the complaints that had arisen in Mr. Tran's absence, stating, "FYI. Need to monitor [Plaintiff]'s behavior closely." ECF 35, Ex. 2 at 1.

## B. Plaintiff's Workplace Injury

On September 10, 2019, at the end of a conversation with Mr. Tran about the results of Plaintiff's HR investigation, Plaintiff shook Mr. Tran's hand and visibly flinched. ECF 35 at ¶ 17; ECF 34, Ex. 1 at 45. Mr. Tran asked Plaintiff why he was flinching, and Plaintiff stated that he had injured his arm on the job while mopping floors on in mid-August. ECF 35 at ¶ 17; ECF 34, Ex. 1 at 45. This was the first time Plaintiff suggested to Mr. Tran or any of Defendant's employees that he had been injured. ECF 34, Ex. 1 at 45.

After hearing of Plaintiff's injury, several Genentech supervisory employees worked with Plaintiff to determine how best to accommodate Plaintiff's injury and implemented accommodations. ECF 34, Ex. 1 at 46–47; ECF 35 at ¶¶ 19–20; ECF 43, Ex. C. On Monday, September 17, 2019, Mr. Tran cleared Plaintiff to return to work. ECF 43-8 at 48–49; *see also* ECF 43, Ex. O. That same day, Plaintiff attended a Safety, Health, and Environmental Group Root Cause Analysis meeting to find the root cause of his injury. ECF 43-8 at 51; *see also* ECF 43, Ex. U. As a result of his injury, Plaintiff had medical restrictions on his ability to grip, lift,

PAGE 6 – OPINION AND ORDER

and engage in repetitive movements with his right hand. ECF 43, Ex. O; ECF 34, Ex. 1 at 50; ECF 35 at ¶ 19. As part of his accommodation, Plaintiff was released from mopping functions and was instructed not to perform any work outside his restrictions. ECF 43, Ex. C at 2; ECF 34, Ex. 1 at 46–47; ECF 35 at ¶¶ 19–20.

For a period of time during September of 2019, Plaintiff performed only computer-based projects. ECF 34, Ex. 1 at 52; ECF 35 at ¶ 19; ECF 43-8 at 61. Plaintiff ultimately returned to performing his regular duties, with the exception of mopping and using his right hand for lifting and forceful grasping. *See* ECF 35 at ¶ 20; ECF 34, Ex. 1 at 64; ECF 43-8 at 61–62. During this time, Plaintiff filed a workers' compensation claim. ECF 43, Ex. B. Starting on September 10, 2019, Genentech Senior Occupational Health Nurse, Jo Brooke, was in touch with Plaintiff on several occasions regarding his restrictions and accommodations throughout the remainder of his employment. ECF 34, Ex. 1 at 48; ECF 35 at ¶ 19. Plaintiff testified in this regard:

> Q. And Ms. Brooke was actually in touch with you on numerous occasions starting from the [injury] report on September 10th, 2019, and throughout the rest of your employment; correct?
>
> A. Correct.
>
> Q. And she was one of the people who helped ensure that you got the accommodations you needed; correct?
>
> A. Correct.
>
> . . . Q. All right. So you thought you could share anything with her about your injury and it would be relevant to your work situation; correct?
>
> A. Correct.

ECF 34, Ex. 1 at 48–49.

### C.  Finalization of Performance Counseling Document

During September 2019, Mr. Tran finalized the Performance Counseling document—which outlined the results of Ms. James-Ishibashi's August 2019 investigation into Plaintiff's misconduct—and presented it to Plaintiff on September 30, 2019. ECF 35, Ex. 3; ECF 34, Ex. 1 at 54; ECF 35 at ¶¶ 15, 21. The Performance Counseling document noted that Ms. James-Ishibashi's investigation had determined that Plaintiff had "engaged in using inappropriate language and poor judgment on several occasions." ECF 35, Ex. 3 at 3. It also noted concerns that Plaintiff "frequently had difficulty comporting [himself] calmly and professionally when becoming frustrated by a process." *Id.* The Performance Counseling document further instructed that, going forward, "[Plaintiff was] expected to remain professional at all times and use appropriate language at work." *Id.* at 4. The document directed that, "[w]hen dealing with workplace frustrations" Plaintiff was expected to "practice remaining calm and collected, and if unable to do so," he should "speak with [his] lead or [Mr. Tran] to request time off the floor to in order to compose" himself. *Id.* The document also stated: "[i]f at any time, [Plaintiff's] performance fails to meet expectations or continues to decline, [Plaintiff] may be subject to further corrective action up to and including termination of [his] employment." *Id.*

The Performance Counseling document also addressed Plaintiff's lack of progress in meeting training qualifications. *Id.* at 2. The document set forth an expectation that Plaintiff obtain sign off on four listed component prep qualification processes by the end of November 2019. *Id.* at 4. As a result of this document, Plaintiff understood that he needed to "improve [his] performance in a number of respects" or his employment might be terminated. ECF 34, Ex. 1 at 63.

### D. Further Reports of Underperformance

Plaintiff failed to achieve any of the four qualifications specified in the Performance Counseling document by the November deadlines, *id.* at 58–59, and had not met these qualifications by late December 2019, ECF 34, Ex. 1 at 70–71. As a result, Plaintiff recalls, "I assumed that I – I thought they were going to fire me. I was – I was just very concerned." ECF 34, Ex. 1 at 74. When asked about training Plaintiff, Mr. Morris testified: "I've been a trainer for almost my whole time here. For about four years . . . . I've trained a lot of people and worked with a lot of, you know, different personalities and capabilities . . . . but for me, [Plaintiff] was the hardest person to train . . . ." ECF 34, Ex. 3 at 12. He further testified:

> Q. Had you seen other people spend that long a duration . . . seeking to get signed off who had so little success in doing so other than Mr. Thomas?
>
> A. No, I have not.

*Id.*

In November 2019, Mr. Tran had discussed with his manager, Mr. Venegas, whether to terminate Plaintiff's employment. ECF 35, Ex. 4 at 1. In a November 18, 2019 email to Mr. Venegas, Mr. Tran stated that, based on Plaintiff's failure to meet any of the required qualifications, "[c]urrently he is not meeting expectations." *Id.* Mr. Tran went on to ask about the timing of a possible termination of Plaintiff's employment, writing: "With the holidays coming up, should I be sensitive to that and wait until next year? Or move forward with his termination in December?" *Id.* Mr. Venegas instructed that Mr. Tran should consult with Ms. James-Ishibashi, as Plaintiff's medical restrictions from his workplace injury "may throw a wrench into things." *Id.* He noted that, "[a]t a minimum[,] [plaintiff] will be a greater contribution needed" – meaning that, if his employment was not terminated, Plaintiff would receive the lowest level performance evaluation rating. *Id.*; *see also* ECF 35 at ¶ 27.

After consulting with Ms. James-Ishibashi, Mr. Tran decided to develop a Performance Improvement Plan ("PIP") for Plaintiff instead of proceeding with termination in December 2019. ECF 35 at ¶ 28. At the end of December 2019, Mr. Tran gave Plaintiff a "greater contribution needed" rating for his yearly performance evaluation. *Id.* at ¶ 29. Mr. Tran then began to draft a PIP for Plaintiff, which included the fact that Plaintiff still had not obtained the qualifications that were to be completed by November 2019. ECF 35 at ¶ 28; ECF 35, Ex. 5. However, due to his discovery of another negative workplace event, Mr. Tran's drafted PIP was never finalized or provided to Plaintiff because Plaintiff was terminated before the PIP could be implemented. ECF 35 at ¶ 27; ECF 35, Ex. 5.

**E.  The Wetting Can Incident and Plaintiff's Termination**

In early January 2020, Mr. Tran learned of an incident that had occurred prior to Plaintiff's holiday vacation. ECF 35 at ¶ 31. Mr. Tran was informed that, on or about December 22, 2019, Plaintiff loudly and repeatedly banged a metal wetting can against a metal wall in what his coworkers perceived as a display of anger and frustration. ECF 35 at ¶ 31; ECF 34, Ex. 1 at 79, 81–82. On that day, Plaintiff was using the wetting can in connection with training he was receiving on filter integrity testing.[1] ECF 34, Ex. 1 at 80. Mr. Morris instructed Plaintiff to fill a stainless-steel wetting can with water from a faucet located in a steel booth. ECF 34, Ex. 3 at 13–14. While attempting to line the can up with the faucet, Plaintiff says he was "banging against the wall" such that, according to Plaintiff, his coworkers "interpreted it as though I was slamming it and trying to break . . . the wetting can." ECF 34, Ex. 1 at 81.

---

[1] Both Ms. Hendrickson and Mr. Morris were apparently present on the shift, and both were giving instruction on this task. ECF 34, Ex. 3 at 13–14; ECF 34, Ex. 1 at 79–80.

Mr. Morris recalls reporting the incident to management, including that Plaintiff was "slamming [the wetting can] extremely hard" and "swearing, calling it – you know, like 'fucking piece of shit.'" ECF 34, Ex. 3 at 13–14. He testified that he "heard several loud, you know, like, huge bangs going off," and went with Ms. Hendrickson "to see what was happening" and found [Plaintiff] "upset" and "kicking [the wetting can.]" *Id.* at 16. Ms. Hendrickson testified that "[t]he only thing [she] saw was [Plaintiff's] frustration and slamming the can against the wall trying to get it to fit." ECF 34, Ex. 4 at 3. Mr. Rodriguez testified that he was also in the area and heard the noise of the can hitting the wall "like three, three, four times" and that it was loud enough that "Kyle [Morris] [said to Plaintiff], are you okay? Because we thought he fall [sic] on the floor or something."[2] ECF 34, Ex. 7, at 5. Ms. Hendrickson testified that the incident was so severe that it caused her and Mr. Morris to conclude that this "was enough" and to come forward and complain about Plaintiff's conduct. ECF 34, Ex. 4, at 12.

On or about January 7, 2020, Mr. Tran sent an email to Genentech Employee Relations Director, Carrie McKiernan, about the wetting can incident and Ms. McKiernan investigated the incident, including interviewing Plaintiff, Ms. Hendrickson, and Mr. Morris.[3] ECF 34, Ex. 1 at

---

[2] Mr. Rodriguez testified at his deposition:

Q: Okay. Now, how long did you hear the noise of Mr. Thomas trying to fill the wetting can?

A. Like three, three, four times.

Q. Okay.

A. Is why Kyle [Morris] offer, say, are you okay? Because we thought he fall on the floor or something.

ECF 34, Ex. 7, at 5.

[3] In her deposition, Ms. McKiernan says: "I spoke to [Ms. Hendrickson], and I believe I spoke to [Mr. Morris] as well." ECF 34, Ex. 8 at 4. In her declaration, Ms. McKiernan also states

83–84; ECF 34, Ex. 8 at 3; ECF 37 at ¶ 7. Plaintiff acknowledged in his interview with Ms.

McKiernan that when he was using the wetting can, it hit the metal wall repeatedly, but he

claimed he was not acting out of anger. ECF 37, Ex. 1. Plaintiff told Ms. McKiernan that he was

making adjustments to the equipment with his foot while trying to follow his work restrictions.

ECF 43-6 at 7. He also explained that trying to move the wetting can with his foot was what

caused the noise. *Id.* Plaintiff told Ms. McKiernan that he did not intend to make noise in the

booth and he was not trying to damage Defendant's equipment. *Id.* at 12. Plaintiff stated that he

did not lose his temper, *id.* at 10, and that he thought that other people were exaggerating about

what had occurred, *id.* at 9.

Ultimately, Ms. McKiernan concluded that the multiple witness accounts from Plaintiff's

coworkers were consistent and more credible than Plaintiff's account. ECF 37 at ¶ 8. She

concluded, in relevant part:

> Finding Summary – [Plaintiff] states he was not angry, and did not slam the equipment into
> the wall, but instead was moving it with his foot in order to comply with his work
> restrictions with regard to his hand. However, multiple witnesses stated [Plaintiff] was
> angry, and making verbal comments that made his frustration clear . . . . [Plaintiff] has not
> successfully changed his behavior despite clear warning with regard to the company's
> expectations.

ECF 37, Ex. 1. Following this investigation, Mr. Tran, in consultation with Ms. McKiernan,

decided to terminate Plaintiff's employment on January 13, 2020. ECF 37 at ¶ 11; ECF 35 at ¶¶

32–34. Plaintiff testified that, when he was informed of the termination, he was told the incident

with the wetting can was "[b]asically, the last straw, or the straw that broke the camel's back."

ECF 34, Ex. 1 at 88.

---

that she interviewed coworkers present in the area during the incident, including Ms.
Hendrickson and Mr. Morris. ECF 37 at ¶ 7. Plaintiff does not offer any facts to dispute that Ms.
McKiernan spoke to these coworkers.

**DISCUSSION**

Defendant moves for summary judgment on Claims One through Seven, as well as

Defendant's affirmative defense of failure to mitigate. ECF 33; ECF 33-1 at 32. Defendant

moves for summary judgment on Plaintiff's ADA disparate treatment[4] discrimination claim

(Claim One), ADA retaliation claim (Claim Two), O.R.A. disparate treatment claim (Claim

Three), and Oregon worker compensation discrimination and retaliation claim (Claim Four),

asserting that Plaintiff cannot make a prima facie case of discrimination or retaliation and cannot

show that Defendant's reasons for termination are pretextual. ECF 33-1 at 23. Defendant also

moves for summary judgment on Plaintiff's ADA and O.R.A. failure to accommodate

discrimination claims (Claims One and Three) because Plaintiff was fully accommodated. ECF

33-1 at 29. Because Plaintiff never made a demand for reemployment, Defendant also moves for

summary judgment on Plaintiff's failure to reemploy claim (Claim Five). As Plaintiff admitted

that he never raised a concern regarding alleged unlawful actions on behalf of Defendant,

Defendant moves for summary judgment on Plaintiff's whistleblower claims under O.R.S.

659A.199 and O.R.S. 654.062 (Claims Six and Seven). Finally, Defendant moves for summary

judgment on its affirmative defense of failure to mitigate, contending that Plaintiff did not

diligently seek other available employment during the period following his termination.

This Court finds that Plaintiff has failed to raise triable issues of fact as to reasonable

accommodation, disparate treatment, retaliation, or hostile work environment and therefore

GRANTS Defendant's motion on Claims One, Two, Three and Four. Further, finding that the

undisputed evidence establishes that Plaintiff did not make a demand for reemployment, this

---

[4] As explained below, Plaintiff proceeds under four separate theories in asserting Claims
One and Three: failure to accommodate, disparate treatment, retaliation, and hostile work
environment. ECF 1 at ¶¶ 31, 58.

Court GRANTS Defendant's motion as to Claim Five. Moreover, the undisputed evidence establishes that Plaintiff did not report any unlawful activity or safety and health violations; accordingly, this Court GRANTS Defendant's motion as to Claims Six and Seven, respectively. As all of Plaintiff's claims are hereby dismissed, this Court DENIES as moot Defendant's motion as to its affirmative defense of failure to mitigate.

## A. Disability Discrimination – ADA (Claim One)

In Plaintiff's first claim, Plaintiff alleges a violation of Title I of the ADA, 42 U.S.C. § 12111 *et seq.* Plaintiff proceeds under four separate theories in asserting this claim: failure to accommodate, disparate treatment, retaliation, and hostile work environment. ECF 1 at ¶ 31. As an initial matter, this Court notes that Plaintiff has failed to present any argument as to his hostile work environment theory. As such, this Court finds that this argument has been waived and GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's hostile work environment claim. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (internal quotation marks and citation omitted)). Moreover, this Court notes that it addresses Plaintiff's ADA retaliation claim in the following section, as retaliation is a distinct claim governed by a different standard than discrimination under the ADA. As such, in this section, this Court addresses Plaintiff's remaining two theories: (1) failure to accommodate and (2) disparate treatment.

The Ninth Circuit has implemented different standards for evaluating discrimination in failure to accommodate and disparate treatment claims under the ADA, recognizing that "a failure-to-accommodate claim 'is analytically distinct from a claim of disparate treatment or impact under the ADA.'" *Dunlap v. Liberty Nat. Prod., Inc.*, 878 F.3d 794, 798 (9th Cir. 2017)

PAGE 14 – OPINION AND ORDER

(quoting *Johnson v. Bd. of Trustees of Boundary Cty. Sch. Dist.*, 666 F.3d 561, 567 (9th Cir. 2011)). As a result, this Court evaluates Plaintiff's failure to accommodate and disparate treatment claims in turn under the applicable ADA discrimination standard for each claim.

### 1.  Failure to Accommodate

Defendant moves for summary judgment on Plaintiff's ADA failure to accommodate claim, asserting that the undisputed evidence, including Plaintiff's own testimony, demonstrates that Plaintiff was fully accommodated. To establish a prima facie case of failure to accommodate under the ADA, Plaintiff must show "(1) that []he was disabled under the ADA; (2) that []he was a qualified individual with a disability; and (3) that []he was discriminated against by [his] employer because of that disability." *Dunlap*, 878 F.3d at 798–99 (citing *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013)).

Under the third element of a prima facie case, the ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a "qualified individual," the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business. 42 U.S.C. § 12112(b)(5)(A). The statute places on the employer the burden to demonstrate an undue hardship. *Id.*; *see also Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). "To withstand a motion for summary judgment on an ADA claim, a plaintiff must either provide sufficient direct evidence of an employer's discriminatory intent[] or give rise to an inference of discrimination by satisfying the burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Ogden v. Pub. Util. Dist. No 2 of Grant Cnty.*, 722 F. App'x 707, 708 (9th Cir. 2018) (citing *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997)). The *McDonnell Douglas* analysis first requires the plaintiff to establish a prima facie case of discrimination, and then shifts the burden to the defendant to articulate a legitimate,

nondiscriminatory reason for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802. The burden then shifts back to the plaintiff to show the defendant's explanation was merely pretext for a discriminatory motive. *Id.* at 804.

Plaintiff asserts that he was discriminated against based on an arm injury that occurred on the job. ECF 1 at ¶ 11, 31, 58. At the end of a conversation with Mr. Tran on September 10, 2019, Plaintiff stated that he had injured his arm on the job while mopping floors on in mid-August. ECF 35 at ¶ 17; ECF 34, Ex. 1 at 45. This was the first time Plaintiff indicated to Defendant that he had been injured. ECF 34, Ex. 1 at 45. Thereafter, Defendant determined how to accommodate Plaintiff's injury and implemented an accommodation. ECF 34, Ex. 1 at 48–49; ECF 35 at ¶¶ 19–20; ECF 43, Ex. C. As a result of his injury, Plaintiff had medical restrictions on his ability to grip, lift, and engage in repetitive movements with his right hand. ECF 43, Ex. O; ECF 34, Ex. 1 at 50; ECF 35 at ¶ 19. As part of his accommodation, Plaintiff was released from mopping functions and was instructed not to perform any work outside his restrictions. ECF 43, Ex. C at 2; ECF 34, Ex. 1 at 46–47; ECF 35 at ¶¶ 19–20. Plaintiff ultimately returned to performing his regular duties, with the exception of mopping and using his right hand for lifting and forceful grasping. *See* ECF 35 at ¶ 20; ECF 34, Ex. 1 at 64.

Defendant asserts that Plaintiff cannot carry his prima facie burden because Plaintiff was fully accommodated. ECF 33-1 at 29. In other words, Defendant contends that Plaintiff has not established the third element of his prima facie case: discrimination based on his disability. In arguing that it accommodated Plaintiff's arm injury, Defendant asserts that "Plaintiff squarely admitted in deposition that Genentech fully accommodated his disability." ECF 33 at 29. Plaintiff testified in his deposition as follows:

> Q. All right. And during the time that you worked at Genentech and had this condition, you received all the accommodations that you needed; correct?

A. Correct.

ECF 34, Ex. 1 at 105. Plaintiff also testified that there was never an accommodation he requested that Defendant denied. *Id.* at 47.

In contrast, Plaintiff asserts that he was denied reasonable accommodations because Defendant required him to work outside his medical restrictions. ECF 42 at 37. Specifically, Plaintiff contends that "Defendant assigned Plaintiff to do work, i.e. moving and filling the wetting can which was too heavy to fit within his work restrictions." ECF 42 at 28; *see also* ECF 34, Ex. 1 at 47 ("[Defendant] actually had me do one task that was outside of what I was approved to be doing after they made the changes to my work, and that would have been when I was moving and working with . . . a wetting tool."); ECF 34, Ex. 1 at 48 ("I want to point out that [Defendant] did have me fill that wetting can, and that was outside the limitations."). Plaintiff contends that "[u]nder any measure, the weight of the empty equipment exceeded [Plaintiff's] lifting restrictions for his on-the-job injury." ECF 42 at 11; *see* ECF 43, Ex. H at 31 (showing weight of wetting can as 50.20 kilograms, which is approximately 110 pounds); ECF 43, Ex. O (characterizing Plaintiff's lifting limit as five pounds); ECF 34, Ex. 1 at 64 (same).

However, when asked about the process of filling the wetting can, Mr. Tran explained that employees "don't pick up" the wetting can to fill it because "the wetting can is on wheels, and it can be rolled around." ECF 43-8 at 63–64. Moreover, this Court finds that Plaintiff's testimony regarding this issue is internally inconsistent, as Plaintiff explained to Ms. McKiernan that, while filling the can on December 22, 2019, Plaintiff was making adjustments to the equipment with his foot in an attempt to follow his work restrictions. ECF 43-6 at 7. Plaintiff provides no alternative evidence beyond his own conclusory testimony that Defendant required

Plaintiff to fill the wetting can in an improper manner that conflicted with his medical restrictions. *See* ECF 34, Ex. 1 at 47–48; *Bohmker v. Oregon*, 903 F.3d 1029, 1044 (9th Cir. 2018) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." (citation omitted)). In other words, while the undisputed evidence establishes that Defendant *had* assigned Plaintiff to fill the wetting can, Plaintiff has offered no evidence beyond his own conclusory testimony that Defendant had assigned Plaintiff to do so in a way conflicted with his medical restrictions and ultimately amounted to a denial of a reasonable accommodation. [5]

Construing the record as a whole in the light most favorable to Plaintiff, this Court concludes that no rational trier of fact could find that Defendant discriminated against Plaintiff by denying Plaintiff a reasonable and available accommodation. Accordingly, this Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's first claim for failure to accommodate under Title I of the ADA, 42 U.S.C. § 12111 *et seq.*

### 2. Disparate Treatment

Defendant moves for summary judgment on Plaintiff's disparate treatment claim under Title I of the ADA, 42 U.S.C. § 12111 *et seq.*, asserting that Plaintiff can neither establish a prima facie case of discrimination nor pretext. ECF 33-1 at 23, 27.

---

[5] Plaintiff separately asserts that there are triable issues as to Defendant's failure to engage in the interactive process but cites no facts in support of this argument. *See* ECF 42 at 37–39. Although Plaintiff addresses this issue separately as a "failure to engage in the interactive process claim," ECF 42 at 37, the Ninth Circuit has held that "there exists no stand-alone claim for failing to engage in the interactive process" and that, "[r]ather, discrimination results from denying an available and reasonable accommodation." *Snapp*, 889 F.3d at 1095; *see also Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111–16 (9th Cir. 2000) (en banc), *vacated on other grounds*, *US Airways, Inc. v. Barnett*, 535 U.S. 391, 406 (2002). Accordingly, for the reasons set forth above, this Court also finds that no triable issues of fact remain as to Defendant's alleged failure to engage in the interactive process.

To set forth a prima facie disability discrimination claim under a termination theory, "a plaintiff must establish that: (1) he is disabled within the meaning of the ADA; (2) he is qualified (i.e., able to perform the essential functions of the job with or without reasonable accommodation); and (3) the employer terminated him because of his disability." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018) (citing *Snead*, 237 F.3d at 1087). As is the case with a failure to accommodate claim, when an employee establishes a prima facie case of disparate treatment because of a disability, and the employer provides a non-discriminatory reason for that discharge which "disclaims any reliance on the employee's disability in having taken the employment action," the analysis developed in *McDonnell Douglas* for suits under Title VII of the Civil Rights Act of 1964 applies. *Snead*, 237 F.3d at 1093; *see also McDonnell Douglas Corp.*, 411 U.S. 792. This analysis first requires the plaintiff to establish a prima facie case, then shifts the burden to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802. The burden then shifts back to the plaintiff to show the defendant's explanation was merely pretext for a discriminatory motive. *Id.* at 804.

### a.  Defendant's Legitimate, Non-Discriminatory Reason for Termination

Assuming without deciding that Plaintiff has established his prima facie case, this Court finds that Defendant has offered sufficient evidence to support its legitimate, nondiscriminatory reason for terminating Plaintiff under the *McDonnell Douglas* analysis. Defendant explains that it ultimately terminated Plaintiff because of his inappropriate behavior during the wetting can incident, which reflected a pattern of underperformance and unprofessional displays of anger and frustration reported to Defendant by coworkers. *See* ECF 33-1 at 28. This pattern dates back to at least June of 2019, when Mr. Tran met with Plaintiff to discuss Plaintiff's method of handling frustration and tendency to curse. ECF 34, Ex. 1 at 15–16; ECF 35, Ex. 3 at 3. In an August 14,

PAGE 19 – OPINION AND ORDER

2019 email to Ms. James-Ishibashi, Ms. Callaway—another one of Plaintiff's supervisors—communicated that she had received reports about Plaintiff's lack of progress in achieving his qualifications and "situations when [Plaintiff] has acted rudely or become easily frustrated to the point of anger," including one incident in which a co-worker "felt threatened" by Plaintiff's anger. ECF 36, Ex. 1 at 1–2. Ms. Callaway also forwarded a summary from Mr. Morris, the lead worker on Plaintiff's team, of various incidents in which Plaintiff had behaved in an angry or otherwise unprofessional manner. ECF 36, Ex. 2 at 2.[6] Ms. Callaway communicated to Plaintiff at this time that "if [she] received any more feedback similar to this" that the company "would need to escalate the issue." ECF 36 at ¶ 4; ECF 34, Ex. 1 at 19–20.

As a result of Ms. James-Ishibashi's August 2019 investigation into Plaintiff's behavior, ECF 34, Ex. 6 at 3–4, Mr. Tran prepared and presented to Plaintiff a formal written Performance Counseling document, ECF 35 at ¶ 14; *see* ECF 35, Ex. 1. This document noted that the investigation had determined that Plaintiff had "engaged in using inappropriate language and poor judgment on several occasions." ECF 35, Ex. 3 at 3. The document further instructed that, going forward, "[Plaintiff was] expected to remain professional at all times and use appropriate language at work." ECF 35, Ex. 3 at 4. The document also stated: "[i]f at any time, [Plaintiff's] performance fails to meet expectations or continues to decline, [Plaintiff] may be subject to further corrective action up to and including termination of your employment." ECF 35, Ex. 3 at 4.

In January 2020, Mr. Tran was informed that, on or about December 22, 2019, Plaintiff loudly and repeatedly banged a metal wetting can against a metal wall in what his coworkers

---

[6] While Plaintiff denies making these specific inappropriate comments, he does not dispute that Mr. Morris reported to Ms. Callaway that Plaintiff had made these comments. ECF 34, Ex. 1 at 28–30.

perceived as a display of anger and frustration. ECF 35 at ¶ 31; ECF 34, Ex. 1 at 79, 81–82. While attempting to line the can up with the faucet, Plaintiff says he was "banging against the wall" such that, according to Plaintiff, his coworkers "interpreted it as though I was slamming it and trying to break the water can – or the wetting can." *Id.* at 81. Although Plaintiff claims he did not act out of anger during this incident, ECF 37, Ex. 1, other coworkers testified to the contrary. ECF 34, Ex. 3 at 13–16; ECF 34, Ex. 4 at 3, 12; ECF 34, Ex. 7, at 5. Genentech Employee Relations Director, Carrie McKiernan, investigated the incident and concluded that Plaintiff's account was not credible. ECF 34, Ex. 1 at 83; ECF 34, Ex. 8 at 3; ECF 37 at ¶ 8; ECF 37, Ex. 1. Following this investigation, Mr. Tran, in consultation with Ms. McKiernan, decided to terminate Plaintiff's employment. ECF 37 at ¶ 11; ECF 35 at ¶¶ 32–34. Based on the above reports regarding both Plaintiff's history of underperformance and inappropriate displays of anger at his workplace and the wetting can incident, this Court finds that Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination.

### b. Pretext

Accordingly, this Court next considers whether Plaintiff has established that no genuine dispute of material fact remains regarding pretext under the *McDonnell Douglas* framework. A plaintiff may prove pretext "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Shelley v. Green*, 666 F.3d 599, 609 (9th Cir. 2012). Under Ninth Circuit law, "[c]ircumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003) (citation omitted). "An employee in this situation can not simply show the employer's decision was wrong, mistaken, or unwise." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (citation and quotation

marks omitted). "Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . and hence infer that the employer did not act for the . . . non-discriminatory reasons." *Id.* (citation and quotation marks omitted).

This Court finds that Plaintiff has failed to establish a triable issue of fact regarding pretext. In disputing Defendant's legitimate, nondiscriminatory reason for his termination, Plaintiff presents no direct evidence of discriminatory motive. Challenging Defendant's interpretation of the wetting can incident, Plaintiff contends that he did not act out of anger but inadvertently created noise because he was impeded in positioning the wetting can due to his medical restrictions. ECF 42 at 32. However, Plaintiff also agrees that his coworkers "interpreted [the incident] as though I was slamming [the wetting can] and trying to break [it]." ECF 34, Ex. 1 at 81. Construing the record as a whole in Plaintiff's favor, the undisputed evidence thus establishes that Plaintiff's coworkers' legitimately perceived Plaintiff to be acting out of anger and, due to a perceived pattern of similar behavior, reported this event to Mr. Tran.

To further challenge Defendant's proffered explanation, Plaintiff claims that "[n]o evidence support[s] that [Plaintiff] slammed the wetting can in frustration and anger." ECF 42 at 32. However, Defendant has offered accounts of the incident from Ms. Hendrickson and Mr. Morris, both of which indicate that Plaintiff acted out of anger. *See* ECF 34, Ex. 3 at 13–14 (reporting that Plaintiff was "slamming [the wetting can] extremely hard" and "swearing, calling it – you know, like 'fucking piece of shit'"); *id.* at 15–16 (reporting seeing "Joe being upset, kicking [the wetting can]"); ECF 34, Ex. 4 at 3 (reporting "[t]he only thing I saw was his frustration and slamming the can against the wall trying to get it to fit").

Plaintiff also asserts that Defendant has presented no evidence that Plaintiff's coworkers complained about his angry and unprofessional behavior after August of 2019. ECF 42 at 32. However, Mr. Morris's report about the wetting can incident was made after August of 2019 and reflected previously-reported unprofessional displays of anger and frustration. *See* ECF 34, Ex. 4, at 12; ECF 34, Ex. 3 at 13–14. Finally, Plaintiff claims that he was never told that his coworkers complained about his anger but fails to cite to the record to support this assertion. ECF 42 at 32. In contrast, Defendant has produced evidence that Plaintiff was informed on multiple occasions about his coworker's complaints. *See, e.g.*, ECF 35, Ex. 3 at 3 (in a June 25, 2019 meeting with Plaintiff, Mr. Tran informed him that "every single team member has brought concerns to my attention"); ECF 36 at ¶ 4; ECF 34, Ex. 1 at 19–20.

Plaintiff's pretext arguments resemble those considered by the Ninth Circuit in *Buhl v. Abbott Laboratories.* 817 F. App'x 408, 411 (9th Cir. 2020). In *Buhl*, the plaintiff was ultimately terminated due to performance issues and misconduct, including the dissemination of a mass email about technical disputes with his manager to a large audience outside of his department. *Id.* at 411–12. In finding that the plaintiff had failed to raise a genuine issue of material fact as to pretext, the Ninth Circuit reflected that "[t]he record [was] replete with evidence of [the plaintiff's] misconduct and performance issues." *Id.* at 410. The Ninth Circuit pointed out that such issues long predated the plaintiff's protected action and that the defendant had already warned the plaintiff that "further misconduct could subject him to termination" and had issued a performance memorandum laying out expectations and potential consequences of future misconduct. *Id.* at 411. Although the plaintiff attempted to explain away this evidence and claimed the defendant's performance concerns were overblown, the Ninth Circuit observed that the plaintiff had failed to "offer[] any other evidence from which a jury could find that [the

defendant's] dissatisfaction and performance—dissatisfaction that was expressed by multiple managers on multiple occasions over multiple months—was feigned." *Id.* at 410–11. Citing to the fact that an employee's subjective judgment of his competence and or contention that the employer's decision was wrong is insufficient to raise a genuine issue of fact, the Ninth Circuit affirmed summary judgment as to the plaintiff's discrimination and retaliation claims. *Id.* at 411.

Similarly, this Court finds that Plaintiff fails to provide any evidence to undercut Defendant's proffered "legitimate, nondiscriminatory" reason for terminating Plaintiff or to show that discrimination based on Plaintiff's disability more likely motivated Defendant to terminate Plaintiff. Defendant's legitimate, nondiscriminatory reason for terminating plaintiff—namely Plaintiff's unprofessional displays of anger in the workplace—is supported by a robust record. Reports of Plaintiff's misconduct predated his injury and Defendant had warned Plaintiff on more than one occasion that termination could result from this misconduct. Although Plaintiff disputes that the wetting can incident was a display of anger on his behalf, Plaintiff does agree that his coworkers interpreted the event as such.

Plaintiff has not shown that Defendant's proffered explanation is unworthy of credence, either because it is internally inconsistent or because it is otherwise not believable. *See Shelley v. Green*, 666 F.3d at 609. Plaintiff's attempt to explain away Defendant's evidence and argue that Defendant's interpretation of the event was wrong is insufficient to raise a triable issue as to pretext. *See Lucent Techs., Inc.*, 642 F.3d at 746 (finding contention that employer's decision was "wrong, mistaken, or unwise" insufficient to establish pretext (citation and quotation marks omitted)); *cf. Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact"); *Newell v. Glob. Steel Prod. Corp.*, 124 F.3d 212, at *2 (9th Cir. 1997)

("[Defendant's] contention that [Plaintiff's] performance declined after her last review and that her inadequate performance became clear . . . was not genuinely disputed by material facts. [Plaintiff's] vigorous denials do not alone create such a dispute."). Moreover, Plaintiff fails to "offer[] any other evidence from which a jury could find that [Defendant's] dissatisfaction and performance—dissatisfaction that was expressed by multiple [coworkers and supervisors] on multiple occasions over multiple months—was feigned." *See Buhl*, 817 F. App'x at 411.

Construing the record as a whole in the light most favorable to Plaintiff, this Court finds that Plaintiff has failed to establish a triable issue as to pretext. Accordingly, this Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's first claim for disparate treatment under Title I of the ADA, 42 U.S.C. § 12111 *et seq.*

## B. Retaliation – ADA (Claim Two)

Defendant moves for summary judgment on Plaintiff's retaliation claim under Title I of the ADA, 42 U.S.C. § 12111 *et seq.* (Claim Two), asserting that Plaintiff can neither establish a prima facie case of retaliation nor pretext. ECF 33-1 at 23.

Under the ADA, an employer cannot "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing." 42 U.S.C. § 12203. To make out a prima facie retaliation claim, Plaintiff must show "(1) involvement in a protected activity, (2) an adverse employment action[,] and (3) a causal link between the two." *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009) (internal quotation marks and citation omitted). If Plaintiff provides sufficient evidence to show a prima facie case of retaliation, the burden then shifts to the Defendant to articulate a legitimate, non-retaliatory reason for its actions. *Porter v. California Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005); *see also Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 504 n.4 (9th Cir.

PAGE 25 – OPINION AND ORDER

1989). If Defendant sets forth such a reason, Plaintiff bears the ultimate burden of submitting evidence indicating that Defendant's proffered reason is merely a pretext for a retaliatory motive. *Id.*

### 1. Prima Facie Claim

This Court finds that Plaintiff has failed to establish a genuine issue of material fact as to the third element of Plaintiff's retaliation claim: causation. Plaintiff cites no facts in support of this element. *See Californians for Renewable Energy v. California Pub. Utilities Comm'n*, 922 F.3d 929, 935–36 (9th Cir. 2019) ("On summary judgment, it is not our task . . . to scour the record in search of a genuine issue of triable fact . . . . Rather, [w]e rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." (alteration in original) (internal quotation marks and citation omitted)).

In citing to relevant case law, Plaintiff appears to rely on the proximity in time between his injury and termination in establishing causation. ECF 42 at 41. "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). However, "a specified time period cannot be a mechanically applied criterion. A rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." *Porter*, 419 F.3d at 895 (internal citation and quotation marks omitted). Moreover, "[e]mployers need not suspend previously planned [employment action] upon discovering [involvement in protected activity], and their proceeding along lines previously

contemplated, though not yet definitively determined, is no evidence whatever of causality."

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).

Defendant's termination of Plaintiff qualifies as an action "proceeding along lines previously contemplated" by Defendant. Plaintiff injured his arm while mopping floors in mid-August of 2019. The first time Plaintiff indicated to Defendant that he had been injured was during a conversion with Mr. Tran on September 10, 2019. ECF 35 at ¶ 17; ECF 34, Ex. 1 at 45. Prior to Plaintiff's report of his injury in September, Mr. Tran had already met with Plaintiff to discuss concerns about his unprofessional communications with his coworkers twice. ECF 34, Ex. 1 at 15–16; ECF 35, Ex. 3 at 3. Moreover, on August 11 and 12, Ms. Callaway spoke to Plaintiff about Plaintiff's lack of progress in achieving his qualifications and his angry and inappropriate interactions, instructing him that "if [she] received any more feedback similar to this that we would need to escalate the issue." ECF 36 at ¶ 4; ECF 34, Ex. 1 at 19–20. Also prior to Plaintiff's report of his injury, Ms. James-Ishibashi conducted an investigation into Plaintiff's behavior at his facility. ECF 34, Ex. 6 at 3–4. Thereafter, Mr. Tran and Ms. James-Ishibashi agreed that Mr. Tran would prepare a formal written Performance Counseling document to address Plaintiff's underperformance and misconduct, which included the following language: "[i]f at any time, [Plaintiff's] performance fails to meet expectations or continues to decline, [Plaintiff] may be subject to further corrective action up to and including termination of [his] employment." ECF 35, Ex. 1 at 3; ECF 35 at ¶¶ 14, 15.

Taken together, this evidence demonstrates that terminating Plaintiff had been "previously contemplated"—though perhaps not "definitively determined"—prior to Plaintiff notifying Defendant of his injury. Accordingly, the fact that Defendant ultimately terminated Plaintiff for his angry and otherwise unprofessional behavior is "no evidence whatever of

causality" in support of Plaintiff's prima facie claim. *Cf. Clark Cnty. Sch. Dist.*, 532 U.S. at 272; *see also Larmanger v. Kaiser Found. Health Plan of the Nw.*, 585 F. App'x 578, 578–79 (9th Cir. 2014) (finding "[p]roximity alone . . . insufficient to establish a triable issue [on causation] given that: (1) there [was] no other direct or circumstantial evidence of a causal nexus; (2) the corrective action and termination were put in motion before [the plaintiff] requested or used medical leave; and (3) the adverse actions were amply supported by legitimate concerns about [the plaintiff's] work performance").

In light of Plaintiff's failure to cite to any facts to support causation, the Ninth's Circuit guidance that "a specified time period cannot be a mechanically applied criterion," *Porter*, 419 F.3d at 895, and the robust record detailing Plaintiff's poor performance and inappropriate workplace behavior prior to his reported injury, this Court finds that Plaintiff has failed to establish a genuine issue of material fact as to the causation element of Plaintiff's retaliation claim. *See Larmanger*, 585 F. App'x at 578–79.

### 2. Pretext

Relying on the pretext analysis above in relation to Claim One, this Court also finds that Plaintiff has failed to raise a triable issue as to pretext as to his ADA retaliation claim. Plaintiff has not cited to any facts to support a finding of pretext on this claim. *See* ECF 42 at 39–41; *Californians for Renewable Energy*, 922 F.3d at 935–36. Construing the record as a whole in the light most favorable to Plaintiff, this Court finds that Plaintiff fails to undercut Defendant's proffered legitimate, nondiscriminatory reason for terminating Plaintiff or show that discrimination based on Plaintiff's disability more likely motivated Defendant to terminate Plaintiff. *See Shelley*, 666 F.3d at 609 (9th Cir. 2012); *see also Mitchell v. Superior Ct. of Cal. Cty. of San Mateo*, 312 Fed. Appx. 893, 895 (9th Cir. 2009) (finding plaintiff failed to establish pretext where plaintiff did not offer "any evidence other than the 'timing' to rebut what

otherwise appears to be an effort by an employer to confront ballooning discoveries regarding an employee's inappropriate behavior").

Accordingly, this Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's second claim for retaliation under Title I of the ADA, 42 U.S.C. § 12111 *et seq*.

## C.  Disability Discrimination and Retaliation – Oregon Rehabilitation Act (Claim Three)

Plaintiff alleges a violation of the O.R.A., O.R.S. 659A.103 *et seq*., in Claim Three. Plaintiff proceeds under four separate theories in asserting this claim: failure to accommodate, disparate treatment, retaliation, and hostile work environment. ECF 1 at ¶ 58. As an initial matter, this Court notes that, as with Claim One, Plaintiff has failed to present any argument as to his hostile work environment theory in support of this claim. As such, this Court finds that this argument has been waived and GRANTS Defendant's Motion for Summary Judgment as to the O.R.A. hostile work environment claim. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (internal quotation marks and citation omitted)).

Oregon and federal law use the same standards to evaluate discrimination and retaliation claims. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) (citations omitted). Under Oregon law, disability claims brought under O.R.S. 659A.103 should "be construed to the extent possible in a manner that is consistent with any similar provisions of the ADA." O.R.S. 659A.139(1). As such, this Court analyzes Claim Three under the applicable ADA standards for discrimination and retaliation. Relying on the ADA discrimination and retaliation analyses in the previous two sections, this Court similarly finds that no rational trier of fact could find that Defendant discriminated against Plaintiff by denying Plaintiff a reasonable

and available accommodation, Plaintiff has failed to establish a triable issue as to pretext on his O.R.A. disparate treatment claim, and Plaintiff has failed to establish a triable issue as to both causation and pretext on his O.R.A. retaliation claim.

Accordingly, this Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's third claim under the O.R.A., O.R.S. 659A.103 *et seq.*

### D.  Worker Compensation Discrimination and Retaliation – O.R.S. 659A.040 (Claim Four)

Plaintiff alleges that Defendant discriminated and retaliated against him for invoking the worker's compensation system by terminating him in violation of O.R.S. 659A.040. ECF 1 at ¶¶ 63–66. Defendant moves for summary judgment on this claim, asserting that Plaintiff has failed to establish triable issues as to pretext. ECF 33-1 at 23, 27.

O.R.S. 659A.040 provides:

> It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in O.R.S. chapter 656 or has given testimony under the provisions of those laws.

O.R.S. 659A.040(1). "Although O.R.S. § 659A.040 mentions only 'discrimination,' courts have analyzed claims under the statute as claims for 'retaliation' or 'discriminatory retaliation.'" *Davis v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, 45 F. Supp. 3d 1222, 1238 (D. Or. 2014); *see, e.g.*, *Herbert v. Altimeter, Inc.*, 230 Or. App. 715 (2009); *Kirkwood v. Western Hyway Oil Co.*, 204 Or. App. 287 (2006).

To establish a prima facie case for worker compensation discrimination or retaliation under O.R.S. 659A.040, Plaintiff must show the following elements: (1) Plaintiff invoked the worker's compensation system, (2) Defendant discriminated or retaliated against Plaintiff in hiring or the tenure, terms, or conditions of Plaintiff's employment, and (3) Defendant discriminated or retaliated against Plaintiff because he invoked the worker's compensation

system. *Williams v. Freightliner, LLC*, 196 Or. App. 83, 90 (2004). Courts apply the burden-shifting framework established in *McDonnell Douglas* to claims brought under O.R.S. 659A.040. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090–94 (9th Cir. 2001) ("[W]hen entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts . . . must apply the *McDonnell Douglas* burden-shifting scheme as a federal procedural rule."); *see also Dawson v. Entek Int'l*, 630 F.3d 928, 934–35 (9th Cir. 2011). After Plaintiff proves a prima facie case, Defendant must present evidence of a legitimate, non-retaliatory reason for the adverse action. *Snead*, 237 F.3d at 1093–94. If Defendant successfully carries this burden, then Plaintiff must show that the non-retaliatory reason given by the employer was merely pretext for discrimination. *Id.*

      Assuming without deciding that Plaintiff has established his prima facie case, this Court finds that Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination: Plaintiff's poor work performance and unprofessional displays of anger, which ultimately culminated in the wetting can incident. This Court next considers whether Plaintiff has carried his burden on pretext. Plaintiff relies on the same arguments as those discussed in relation to his ADA disability discrimination claims to establish pretext for this claim. *See* ECF 42 at 26, 31–32. As analyzed above in relation to Plaintiff's first and third claim, Plaintiff has failed to establish a triable issue as to pretext. Plaintiff fails to offer any direct or specific, substantial circumstantial evidence of discriminatory motive. Although Plaintiff disagrees that the wetting can incident was a display of anger on his behalf, Plaintiff does agree that his coworkers interpreted the event as such. ECF 34, Ex. 1 at 79, 81–82. Construing the record as a whole in Plaintiff's favor, the undisputed evidence thus establishes that Plaintiff's coworkers' perceived

Plaintiff to be acting out of anger and, due to a perceived pattern of similar behavior, reported this event to Mr. Tran.

This Court finds that Plaintiff fails to provide any evidence to undercut Defendant's proffered "legitimate, nondiscriminatory" reason for terminating Plaintiff or to show that discrimination based on Plaintiff's disability more likely motivated Defendant to terminate Plaintiff. Construing the record as a whole in the light most favorable to Plaintiff, this Court finds that Plaintiff has failed to establish a triable issue as to pretext under O.R.S. 659A.040. Accordingly, this Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's fourth claim for worker compensation retaliation and discrimination under O.R.S. 659A.040.

**E.  Failure to Reemploy – O.R.S. 659A.046 (Claim Five)**

Defendant moves for summary judgment on Plaintiff's sixth claim for failure to reemploy Plaintiff in an available position in violation of O.R.S. 659A.046, contending that Plaintiff never made a demand for reemployment. ECF 1 at ¶¶ 67–72; ECF 33-1 at 31. Under this statute, a plaintiff must prove that "(1) he sustained a compensable injury, (2) he was disabled from performing the duties of his former regular employment, (3) he demanded reemployment, and, after the demand, (4) there was an available and suitable position for him, and (5) the employer failed to reemploy him." *Summerfield v. Oregon Liquor Control Comm'n*, 366 Or. 763, 773–74 (Or. 2020). The right to reemployment terminates after "seven days elapse from the date that the worker is notified . . . that the worker's attending physician . . . has released the worker for reemployment," unless the worker makes a demand for reemployment during the seven days. O.R.S. 659A.046(3)(e).

Defendant claims that no triable issues remain on this claim because Plaintiff failed to make a demand for reemployment, citing a declaration by Ms. McKiernan that she is not aware of Plaintiff seeking reinstatement or employment following Plaintiff's termination. ECF 33-1 at

PAGE 32 – OPINION AND ORDER

31; ECF 37 at ¶ 12. Plaintiff responds that such a demand is not necessary because it would have been futile. ECF 47. Under Oregon Administrative Code ("O.A.R.") 839-006-0135—an administrative rule concerning O.R.S. 659A.04—"[w]hen the injured worker has not made demand for reemployment to an available, suitable position because the employer has made it known to the worker that reemployment will not be considered even if a suitable position is available and that an actual demand would therefore be futile . . . the worker [is deemed] to have made timely demand." O.A.R. 839-006-0135. In support of his futility argument, Plaintiff cites to the following facts:

> Here, Defendant claimed that it fired Plaintiff for misconduct. Furthermore, Plaintiff was still on modified or light duty work. On January 17, 2020, Noi Vongsoury sent Ms. Brooke an email about [Plaintiff's] workers' compensation claim[, notifying her] that Genentech was not responsible for paying [Plaintiff] time loss exposure if he was unable to work because Genentech had terminated him.

ECF 47 at 2. Plaintiff cites no authority stating that these facts equate to Defendant "making it known" that it would not consider reemploying him. Defendant does not dispute these facts but characterizes them as "circular." ECF 50 at 21.

Plaintiff has failed to produce evidence that he made a demand for reemployment. In addition, this Court finds that, as a matter of law, the facts cited by Plaintiff do not establish that requesting reinstatement would be futile. Construing the record as a whole in the light most favorable to Plaintiff, this Court finds that Plaintiff has failed to establish a triable issue as to Plaintiff's demand for reemployment. Accordingly, this Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's fifth claim for failure to reemploy under O.R.S. 659A.046.

**F.  Whistleblower Discrimination and Retaliation – O.R.S. 659A.199, O.R.S. 654.062 (Claims Six and Seven)**

Plaintiff alleges whistleblower discrimination and retaliation for reporting both unlawful activity in violation of O.R.S. 659A.199 (Claim Six), ECF 1 at ¶¶ 73–76, and health and safety

PAGE 33 – OPINION AND ORDER

violations in violation of O.R.S. 654.062 (Claim Seven), *id.* at ¶¶ 77–83. Defendant moves for summary judgment on both claims, contending that Plaintiff never reported unlawful conduct or health and safety violations to Defendant. ECF 33-1 at 30.

O.R.S. 659A.199 provides that "[i]t is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." O.R.S. 659A.199(1). "[A]n employee has engaged in protected activity under that provision if the employee has reported information that he or she subjectively believes is a violation of a state or federal law, rule, or regulation and has a good faith basis for that belief." *Boyd v. Legacy Health*, 318 Or. App. 87, 98–99 (2022). "Th[e] provision turns on whether the employee has reported in good faith based on what the employee believes is evidence of unlawful activity." *Rohrer v. Oswego Cove, LLC*, 309 Or. App. 489, 497 (2021).

Similarly, O.R.S. 654.062 prohibits an employer from discharging, demoting, or in any way retaliating against an employee because an employee has opposed an unlawful practice related to safety and health. O.R.S 654.062. "[A]n employee need not prove an actual violation [of law], but must only "establish that he suffered discrimination at his employment because he made a complaint 'related to' safe and healthful working conditions." *Krouse v. Ply Gem Pac. Windows Corp.*, 803 F. Supp. 2d 1220, 1227 (D. Or. 2011) (quoting *Butler v. State, Dep't of Corrections*, 138 Or. App. 190, 201 (1995)).

Plaintiff has failed to offer evidence of any report of unlawful activity or health and safety violations made by Plaintiff to Defendant. Moreover, in his deposition, Plaintiff agreed

that he never "raise[d] any concern . . . about any actions [he] claimed or thought were unlawful" and testified that he thought Defendant was "following the law." ECF 34, Ex. 1 at 105–06. Construing the record as a whole in the light most favorable to Plaintiff, this Court finds that Plaintiff has failed to establish a triable issue as to his whistleblower discrimination and retaliation claims under O.R.S. 659A.199 and O.R.S. 654.062. The undisputed evidence establishes that Plaintiff has not "reported information that [he] believes is evidence of a violation of a state or federal law," as required by O.R.S. 659A.199. *See Folz v. ODOT*, 287 Or. App. 667, 673–75 (2017) (concluding "plaintiff could not prevail on her whistleblowing claim[ ] under O.R.S. 659A.199 as a matter of law where "none of the actions for which plaintiff claims to have been retaliated against qualify as 'reports' of information that plaintiff believed to be 'evidence' of a 'violation' of law"). Moreover, Plaintiff has failed to "notify [Defendant] of any violation of law, regulation[,] or standard pertaining to safety and health in [his] place of employment," as required by O.R.S. 654.062.

Accordingly, this Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's six and seventh claims for whistleblower discrimination and retaliation.

## CONCLUSION

For the reasons stated above, this Court GRANTS Defendant's Motion for Summary Judgment, ECF 33, as to Claims One through Seven and DENIES as moot Defendant's motion as to its affirmative defense of failure to mitigate. This case is hereby DISMISSED and all existing deadlines are vacated.

**IT IS SO ORDERED**.

DATED this 23rd day of June, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge